# Appeal of George Schlaudecker et al.

Where the stockholders of a banking corporation are, by statute, de-clared individually liable, to the amount of their stock, to creditors and depositors of the corporation, depositors who are also stockholders whose stock has been paid up in full are, on the corporation's making a general assignment for the benefit of creditors, entitled to participate in the distribution of the fund in the hands of the assignee ratably with other creditors, to the extent of their deposits.

Where, however, a stockholder has not paid for his stock in full, the share in the fund otherwise distributable to his claim as a creditor, is to be first applied in payment for his stock in full; and thereafter any balance remaining will be distributable to him as a creditor.

A bank certificate of deposit in the following words: "A. B. has deposited in this bank $100, payable to the order of himself; interest 4 per cent if left 6 months, 5 per cent if left 12 months," dated and signed, is not a negotiable instrument, and when transferred by indorsement is subject, in the hands of the transferee, to all equities subsisting between the bank and the depositor; and when such a depositor is a stockholder in the bank, and his stock has not been paid in full, the *pro rata* amount of the fund in the hands of the assignee of the bank for the benefit of creditors apportionable to such certificate of deposit, is, notwithstanding the transfer of the certificate, to be first applied on the indebtedness of the depositor to the bank on account of his unpaid stock subscription.

(Argued April 23, 1888. Decided May 14, 1888.)

January Term, 1887, No. 240, E. D., before GORDON, Ch. J. PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas of Erie County in the matter of the distribution of the assets of the Humboldt Safe Deposit & Trust Company, May Term, 1885, No. 167. Affirmed.

The Humboldt Safe Deposit & Trust Company was incorporated by act of assembly of Pennsylvania, approved April 13, 1869, P. L. 943. and supplements of June 2, 1871, P. L. 1298, and April 26, 1872, P. L. 1156. It was duly organized on or

NOTE.—Stockholders and directors who are bona fide creditors may share in the assets of the insolvent bank (Inland Ins. Co.'s Estate, 9 Lanc. Bar, 119; Craig's Appeal, 92 Pa. 396; Hammond's Appeal, 123 Pa. 503, 16 Atl. 419); but not until their liabilities are satisfied (Hogg's Appeal, 88 Pa. 195). The fact that the par value of stock, paid in full, was reduced one half, will not relieve the stockholder from his liability. Dreisbach v. Price, 133 Pa. 560, 19 Atl. 569.

about May 16, 1869, at the city of Erie, Pennsylvania, and continued in the business of a general savings bank from the time of its organization up to about January 31, 1885, when it ceased to receive or pay deposits, having become insolvent. In April, 1885, the company made a deed of vountary assignment of all its property and effects to John C. Hilton in trust for the benefit of its creditors, which said trust was duly accepted by the assignee. November 9, 1885, said John C. Hilton filed his first partial account as assignee in the common pleas of Erie county, which said account was confirmed absolutely by the court, and S. L. Gilson, Esq., was appointed auditor to distribute the fund shown to be in the assignee's hands.

It appeared that certain depositors and creditors of the company were stockholders therein, some of whom had paid their stock in full and others had not. One H. D. Reed claimed a dividend on three certificates of deposit, issued by the Humboldt company to Jane E. Beckers, and by her indorsed in blank, to the claimant.

These certificates were in the following form:

Humboldt Safe Deposit and Trust Company.
$100.00                    Erie, Pa., January 10, 1884.

Mrs. Jane E. Beckers has deposited in this bank one hundred dollars, payable to the order of herself; interest 4 per cent if left 6 months, 5 per cent if left 12 months.

No. 4,915.                (Signed)

J. J. Sturgeon, Secretary.

The auditor having made a report, exceptions were filed thereto, which were overruled by the court in the following opinion by GALBRAITH, P. J.:

The principal questions raised by the various exceptions filed relate to the rights of persons who are at the same time depositors and stockholders in the insolvent bank.

It is claimed that such persons cannot be allowed to participate in the distribution until the shares of stock for which they have subscribed have been fully paid up, and further, that stockholders who are depositors should not be permitted to receive their *pro rata* dividend until after all indebtedness of the bank has been fully paid, inasmuch as by the terms of an act of assembly passed April 26, 1872, it is provided "that each stockholder of the Humboldt Safe Deposit & Trust Company shall

be individually liable to the depositors and creditors of said company, to the amount of the stock of the said company subscribed for or held by him."

That the stock of a bank, as well as that of any other corporation, is a fund for the payment of the debts of such institution is well-settled law. It follows from this that a creditor who is indebted to the insolvent corporation for unpaid stock cannot participate in the distribution of the proceeds of the assets until such unpaid stock subscription has been made up, and all he can be allowed to require at the hands of the assignee would be that the dividend declared upon his claim as depositor shall be applied to the payment of the balance due on his unpaid subscription.

To this extent the nonstockholding claimants on the fund are undoubtedly right. They go further, however, and insist that, as by the terms of the act of 1872 the stockholders are made individually liable to the creditors and depositors, this further statutory liability must also come in—to still further set off any claims that the depositing stockholders may have in the distribution.

If the personal liability, created by the statute, is a direct indebtedness, then it should unquestionably come in on the same principle as the balance due on stock subscriptions and be set off against claims of depositors who are at the same time stockholders.

But the statutory liability is merely contingent; the stockholders are not primarily liable, personally and individually, to the creditors and depositors, but only in the event of the final inability of the bank to pay. In the first instance, the bank alone is responsible; and while it may be highly probable that the corporation assets will not be sufficient to pay the liabilities. this cannot be assumed nor the rule varied—which, I take it, requires the distribution to be made without reference to the question of ultimate individual liability.

Were this an entirely new question I would have no hesitation in coming to this conclusion, but we are not without precedent. The supreme court of this state determined and settled the character and effect of this kind of liability on the part of corporation stockholders in the case of Patterson v. Wyomissing Mfg. Co. 40 Pa. 117. The stockholders in that corporation were, by the act of April 20, 1853, supplementary to the act of April 7, 1849. liable for all debts contracted while they were

stockholders, although they had paid up the whole of their stock, and Chief Justice Lowrie, delivering the opinion of the court said: "What is the character of their liability? We think it is secondary, not primary; collateral, not principal; analogous to a case of guaranty, to be enforced if the regular process in the principal contract proves fruitless, or if the corporation becomes insolvent. The nature of the case shows this; for the true contract is with the corporation, and therefore it has the principal duty and liability; and the individual liability of the stockholder is a supplementary one, added on to secure the other."

The same rule was laid down at a later date in the case of Means's Appeal, 85 Pa. 79.

It follows logically from this premise that for the present purpose, namely, that of the distribution of the fund now on hand, only the direct and ascertained indebtedness of depositors can be properly set off against their ascertained claim for shares in the money to be distributed. If, therefore, a depositor or other creditor is at the same time indebted on a subscription for capital stock, such amount must be deducted from a set-off against the amount of dividend allotted to such claimant. And when a stockholder has fully paid up his stock subscription, then such person, in the absence of any other direct indebtedness, will be entitled to be paid as other creditors whatever amount may be coming to him in the distribution. Or, if the balance due on the stock subscription should be less than his dividend in the distribution, then he will be entitled to receive the surplus remaining after payment of the full amount remaining unpaid on his stock subscription.

Any question as to the regularity of any assessments made upon stockholders on their stock subscriptions will come up hereafter. They cannot properly be determined here. Without regard to such questions it is sufficient to say that as the capital stock stands as a fund for the payment of the debts of the corporation, it must follow that so long as a stock subscription remains unpaid the person who is thus liable to the bank cannot be permitted to be paid out of the fund as if such obligation did not exist. The question of the liability of the stockholders for the unpaid stock subscriptions due on the shares assigned to and held by G. Jarecki in trust for the bank must come up when the case arises for determining the individual liability of the several stockholders, and which must be by a bill in

equity in the name of the assignee, as provided by § 1, of the act of April 12, 1867 (P. L. 71).

The whole matter of the individual liability of stockholders, for an amount beyond their respective stock subscriptions, must necessarily remain in abeyance for the present.

The point raised by the exceptions filed on behalf of H. D. Reed was properly ruled by the auditor. That such certificates are not to be regarded as negotiable would seem to be the settled law. They are, therefore, held by Mr. Reed subject to all equities subsisting between the bank and Jane E. Beckers, to whom they were issued, and who, it appears, is indebted for stock for which she subscribed. Whatever *pro rata* share in the distribution would be applicable to these certificates should be withheld and applied on the stock subscription for which she is liable.

This disposes of the questions raised by the exceptions filed, and it is now ordered that all the exceptions be overruled, and that the report of the auditor be approved and confirmed.

A decree having been entered accordingly, certain creditors who were not stockholders appealed—the appellees being creditors who were stockholders.

*S. M. Brainerd, Force & Yard, Vincent & Walling,* and *Allen & Rosenzweig* for appellants.

*Davenport* and *Benson* for appellees.

PER CURIAM:

We think this case has been properly settled in the court below.

The principal assignment of error, or the one principally urged in the argument of the learned counsel for the appellants in this court, embraces the ruling of the auditor: "That the holder of the capital stock of the corporation whose stock is paid up in full is entitled to participate in the distribution of the funds in the hands of the assignee, ratably with other creditors, to the extent of his deposit." This ruling has been fully vindicated in the opinion of the learned judge of the court below. We agree with him, that the personal liability of the stockholder, as created by the statute, is not in the nature of a direct indebtedness to the corporation or its creditors, but rather a collateral liability which may or may not occur upon

the final disposition of the assets of the trust company, and that in this the stockholders are guarantors rather than sureties.

The appeal is dismissed and the decree affirmed, at costs of appellants.